Perciavalle v. McDonough Case No. 20-1653 Mr. Dohakis, are you ready? Yes, Your Honor, I am. Yes, you may proceed, please. Thank you. May it please the Court. On behalf of Mr. Perciavalle, I want to thank the Court for the opportunity to present his case today. This appeal primarily asked the Court to consider first the proper interpretation of 38 U.S.C. 5904C and its requirement that a Notice of Disagreement is filed with respect to the case before an agent is entitled to charge and earn a fee. However, to interpret this phrase, we must first look at and consider exactly what, under Section 7105, a Notice of Disagreement is. Pursuant to 5904C, a fee may not be charged, allowed, or paid for services with respect to services provided before the date on which a Notice of Disagreement is filed. Counsel, this is Judge Reina. It seems to me that the central question that we're dealing with here is how specific does the NOD have to be? Can you address that issue? Yes, Your Honor. Looking at the structure of the statute as well as case law, the specificity of the Notice of Disagreement should not be read to have a clear or a precise pleading requirement. The sole purpose of the Notice of Disagreement is to initiate an appeal, and it must be remembered that a Notice of Disagreement is not an appeal. What it does, under the statute, is it triggers specific actions by the agency of original jurisdiction to review the record anew, applying all relevant laws, and make a new decision in response to the disagreement. In Hamilton v. Brown, Site 39F3rd, 1574, this court held that the NOD has no other function but to initiate appellate review. And in Gallegos v. Principi, the court said, and I'm quoting, although initiated in the appeal process, an NOD may or may not actually lead to an appellate review. How does the court know that it even has jurisdiction over a particular issue unless there's some sort of specificity as to what's at dispute, especially if we're talking about a point of law? Your Honor, the jurisdiction on these specific issues is derived from the substantive appeal. When a Notice of Disagreement is filed, as I said, the statute triggers specific actions by the agency that must be performed. One of those is a mandatory development or review action where the AOG identifies and applies all applicable laws to effectuate the VA-stated policy, which, as we pointed out in our briefing, under 38 CFR 3.103A, is to render a decision which grants every benefit that can be supported by law. And so the agency either will grant the benefit or issue a supplemental state... I'm sorry, a statement of the case, which under 7105 D1, requires it to set out the specific allegations of error, relate this to the specific items, and then clearly identify... I'm sorry, that was the... ...and to issue a new decision on each issue with a summary of the reasons for such decision. From that statement of the case, the claimant then identifies the specific issues that he or she wishes to appeal to the board, and the board's decision is where the courts derive their jurisdiction, not from the agency. Mr. DeHagas, is Judge Clevenger... Yes, Your Honor. As you pointed out, I mean, in order for your client to be able to prevail, you have to satisfy the test in 5904C1, right? Yes, Your Honor. And that test says he has to file a NOD, quote, with respect to the case. And so, the with respect to the case seems to me to be the key language. The CAVC held that the NOD that you... ...that the lawyer filed was not with respect to the TDIU case. So, if the CAVC was correct in that regard, then it's fine that he filed a NOD, but the NOD, a NOD, that's just to say that raised the question, asked for review, but it was not, quote, with respect to the case. And so, it was an insufficient NOD for purposes of allowing your client to be able to have access to his share of the attorney fee, share of the veteran's reward. So, it seems to me that the language with respect to the case is where you should be focusing to try to convince us that the CAVC was wrong. The CAVC recognized that SMC is affiliated with, but they felt that SMC, in this case, the board was not obligated to consider SMC. Correct, your honor. That is the... I mean, I'm just looking for what is basically the fulcrum or where the point, the decision tree here is. That unless you can convince us that the April 30th letter was with respect to SMC as opposed to with respect to TDIU, you can't prevail, correct? Yes, your honor. I would agree with that. However, I would disagree... I think I can't tell you how to argue it, but it seems to me that you should need to focus on why it is you think that a nod with respect to SMC was a nod with respect to the case in front of the agency, which was only TDIU. The agency was trying to decide whether to continue TDIU for the veteran, correct? Generally speaking, yes, correct, your honor. However... The actual action, the trigger here was the request, the questionnaire that was sent to the veteran, asking the veteran if he was still unemployed. If he checked the box that he was employed, he would lose his TDIU. So the R.O. was doing housekeeping. The TDIU that he'd been granted for a limited period was running out. And so the R.O. was, as it should, sends the letter to the veteran saying, please answer this questionnaire. Yes, your honor, but that interpretation only works if the secretary is allowed to ignore two very important binding laws, one of which is 38 U.S.C. 5107B, which requires the VA to consider all information and lay in medical evidence of record in a case before the secretary with respect to benefits. Furthermore, as I mentioned, 38 C.F.R. 3.103A requires the VA, each time he makes a decision, to grant every benefit supported by the law. So when we are looking at what is the case, we have to consider it within the context of those two, primarily those two laws that require a thorough review each and every time a decision is made to the veteran or claimant, and also requires the VA to grant every single benefit supported in the law. And that is where the basis of the entitlement to additional benefits for his already service-connected conditions derives its authority. And so when the... Now, in this discussion that we've been having thus far, Mr. Dukakis, if one read the opinion of the CABC and then set it aside and listened to this discussion we've been having, none of this discussion is reflected in any way, shape, or form in the CABC decision. And the reason for that, according to your adversary here, is that you had not raised these issues to the CABC. And that you're raising... That is correct, Your Honor. ...raising them any first time here on appeal. They are raised for the first time here before this court, but as we explained in our briefing, the court's ruling was based upon an interpretation of what is the NOD with respect to the case, where they interpreted the notice of disagreement adding a qualifier or a descriptor of a valid NOD as opposed to what 5904C really states... Right. ...is that just a notice of disagreement is required. Right. But as you clearly know, our ability to hear an argument raised to us for the first time on appeal is a matter of discretion for us to decide whether to exercise that discretion. And it seems to me that a number of these things you're raising with us are interesting arguments, but it might have been better if they'd been vetted first by the CABC so that we had its point of view on these issues before we are being asked to decide them as a matter of first impression. So I'm interested in knowing why you think it's a matter... How do you counter the argument that it might not be a good exercise of discretion for us to proceed on these points? Well, primarily, Your Honour, as I said in the briefings, the Veterans Court did interpret the statute in a way that is inconsistent with the plain meaning and the structural... ...and the structure of the statutory scheme. The statutory analysis by the CABC was not with respect, really, at all to 5904C1. It was with respect to the statute, the regulation that provides for responding to the questionnaire. And that on response to the questionnaire, the VA will rearrange all benefits. Yes, Your Honour, and they did that, but they started with a premise that the NOD must in some way be limited to whatever determination was in the decision letter mailed to the claimant. And the correct interpretation, which they glossed over, honestly, and failed to really explain why, but the correct interpretation of both 5904C and 7105 is that the notice of disagreement is derived in part, in large part... Can you cite that decision in the record? Cite me to that decision letter you just mentioned. Yes, Your Honour, the decision letter... The proposal to reduce was at page 40 of the appendix. Page 40. And... Yes, and then that's all TDIU, and that's a request, and they say we're going to send a questionnaire, right? Yes, Your Honour, and then on page 42 of the appendix is the response to his questionnaire saying that they have reconsidered the proposal and have decided not to make the proposed change. However... He responded saying that he was still unemployed, and therefore he was entitled to continue receiving TDIU. Yes, Your Honour. Counsel, this is Judge Stoll. I have a quick question for you. My understanding is that the certification of no employment sought here was not required for the establishment of the special monthly compensation. My understanding is correct, right? That is correct, Your Honour. Thank you. Your Honour, I am out of time, so I will try to... I will continue my argument in my rebuttal time. All right, let's hear from the other side, please. Mrs. Akers?  First, Mr. Percival's argument on appeal that the Veterans Court's alleged misinterpretation of 5904 and 7105 are waived, and therefore the court need not consider them. Here today on an argument, counsel admitted that these issues are raised for the first time on appeal, and as Your Honour noted, it's a well-established general rule that arguments raised on appeal that were not previously argued below are not considered, and counsel has provided no reason that the court should not apply that well-established rule here. Even if the court were to consider the 5904 and 7105 arguments, the plain language of these statutes resolve this argument. We all agree that a notice of disagreement is a prerequisite to attorney's fees, and to Judge Reyna's question, what is actually required in that notice of disagreement, we should start with 7105, which says that appellate review is initiated by a notice of disagreement, and it must be submitted in a form prescribed by the secretary. So if we look to 38 CFR 20.201, the secretary provides that a notice of disagreement is a written statement that expresses disagreement or dissatisfaction with an adjudicated determination, and it must be reasonably read to express disagreement with that determination, and that's consistent with 5904, which provides that a notice of disagreement must be filed with respect to the case. So here, Mr. Percival filed this notice of disagreement. It concerned SMC, and it was in response to the April 2014 writing decision for TDIU, but there was nothing in the April 2014 determination for which Mr. Percival could have disagreed with, and so the document, although it was titled a notice of disagreement, was actually not a notice of disagreement as provided in 20.201, and therefore, even if the court were to consider this argument that was waived, there was no notice of disagreement filed that triggered eligibility for fees. Would it be sufficient for the NOD to just refer back to the decision of the agency of such-and-such date? I think no, Your Honor, under 20.201 because it requires an express or written dissatisfaction or disagreement with an adjudicated determination, a desire to contest the result. Perhaps, Your Honor, it could be reasonably construed as a disagreement. If it were facially obvious, then perhaps the VA could make that determination, but 38 CFR 20.201 prescribes these three steps, and so the veteran has to follow those. Okay. Mr. Percival's second argument under Section 3.652, the Veterans Court correctly found that VA was not required to adjudicate all of the veteran's benefits during this reduction proceeding. The reduction proceeding is limited to the veteran recertifying eligibility for benefits, and then the VA makes any necessary adjustments based on that certification. And to Your Honor Stoll's question, there's nothing in that certification that relates to the SMC award or eligibility at all, and there's no textual basis in Section 3.562 that the VA must re-examine all of the benefits in a reduction proceeding. It's not a regulation about the general adjudication of benefits, and as Judge Clevenger noted, the central issue here is whether the April TDIU determination involved SMC. It plainly did not. For those reasons, Your Honors, unless Your Honors have any further questions, sure. Yes, Ms. Akers? Well, you have to come to grips with the clear statement by the CABC that if the RO had been obligated to consider SMC, the April 30 letter would have been a sufficient nod. I agree, Your Honor. You understand. You agree with me, don't you, that the CABC made that point? That's correct, Your Honor. Okay, okay. So let me finish before you carry on. Why wasn't the board obligated to consider SMC? For several reasons, Your Honor. First, the certification that was requested of the veteran was in the context of a reduction proceeding, and on pages 18 to 19 of our brief, we explained the difference between a reduction proceeding and a claim proceeding. A reduction proceeding is not a general adjudication of benefits. It's for a particular purpose on a particular benefit, and the benefit was already being experienced by the veteran. He nearly had to provide information regarding his employment to recertify his eligibility. I appreciate that point, but it's true, is it not, that the RO would have been obligated to look at DEA in connection with a TDIU extension? That's correct, Your Honor. That comes... Wait, wait, wait. I'm not finished. They don't go quite so fast. So if the RO was obligated to look at DEA, why wasn't it obligated to look at SMC? That has nothing to do... That has nothing to do whether it's a renewal or an extension. Understood, Your Honor. DEA is derivative from the TDIU, and the court noted that in, I believe it was footnote one. SMC is not derivative or related to the TDIU certification at all. If this were a situation where SMC had the same elements, or... What about SMC for housing? What about statute 1114-S? Doesn't there in the USC 1114-S say that SMC for housing is derivative from TDIU? I will, I'll pull up that statute right now, Your Honor, but I believe that the point here is that there's nothing in a TDIU proceeding, reduction proceeding, not even just an adjudicatory proceeding. There's nothing in this reduction proceeding that is derivative of or relates to SMC at all. And Appell doesn't make an argument on appeal that there was some necessary component of TDIU that implicated SMC. The only argument... I'm basically exploring this with you primarily for my own benefit to understand the case, because your opposing counsel doesn't get into this discussion about the obligation to have looked at SMC at all. So I don't view it as central with the decision of the case. I'm just curious because I do my homework and try to figure out why the SMC, why the board, pardon me, the CAVC felt that there was no obligation to look at SMC. Right. And Your Honor, I would point you to perhaps Appendix 15 and our brief on pages 25 and 26 that talks about when the VA is required to look at SMC. It's true that SMC benefits are inferred, but that doesn't mean that the VA must consider SMC whenever it makes any determination. And so in this TDIU reduction proceeding... Most SMC doesn't have any relation to TDIU at all. I mean, you get SMC if you've lost both arms, both legs, your eyes. That relates to and derives from readings for other disabilities, not TDIU. Right. And the only SMC benefit that I can think of that is tied in any way to TDIU is in 114-S, which is housing. I don't want to take away the rest of your time from arguments, so... I'm sorry. I just know... Okay. There's no basis in law that the VA has an affirmative obligation to assess eligibility for SMC whenever a claimant submits a certification form in the VA-initiated rating reduction proceeding or in every proceeding. So our position here is that the court need not consider that because one, appellant didn't raise it, and two, there's no authority that we've identified. If your honors have no further questions, we respectfully request that the court affirm the Veterans Court's decision. Thank you. Thank you. Okay. Mr. DeHarkis. Thank you, Your Honor. I want to start first by talking briefly about why the court does have jurisdiction. As we mentioned in our reply brief, 4C says that 7292A does not require that the issue have been raised or contested only that the decision depended on a particular statute or regulation. And I would also like to point out as we did in our reply brief that the court did have, the Veterans Court did have an opportunity to address this argument in our motion to reconsider but chose not to. And I don't believe that that would be an appropriate reason for not deciding the issue here today. Central to this decision, relating back to the questioning just before the secretary ended, is whether special monthly compensation is required in every decision. The secretary is trying to differentiate between this and any other decision issued by the secretary. But SMC, special monthly compensation, is the exact same issue as entitlement to TDIU. We did not go into it because the focus of it was explaining in our briefs why the law requires the VA to review the entire- Did you make this argument below? Not to the Veterans Court, Your Honor. Well, obliquely we did in arguing that 3.652B required the VA to consider special monthly compensation. And the basis for that is, and you asked about 38 U.S.C. 1114, if you look at the entire structure- I hear that my time's up. Yeah, go ahead and conclude, sir. Okay. So the entire structure of 1114 is to determine the correct amount of compensation to be paid. It starts at a 10% rating, up to 100%, whether it's TDIU or otherwise. And then beyond J, you have K, L, M, N, O, P, R, S, and T. So all of them are actually just the ratings that Congress has directed. When you meet the qualifications, VA will pay the specified amount of money. And it makes no difference whether the veteran, who, by the way, had suffered a service-connected stroke which served as the basis for his special monthly, and was also required a fiduciary because of his dementia. And I'll refer you to the joint appendix at page 24 to 33. Whether somebody in that state raised the issue or not, does not alleviate the VA's obligation or 5107 and 3.1038. Thank you. All right. I believe we have your argument. Thank you very much. This case is now submitted.